# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,    :    Case No. 3:17-cr-190
                                              Also 3:19-cv-87

                                              District Judge Walter H. Rice
- vs -                                Magistrate Judge Michael R. Merz

DEANDRE EUGENE WHITE,

        Defendant.    :

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 47). The Government opposes the Motion (ECF No. 56) and Defendant has filed a Reply combined with a motion to strike (ECF No. 59).

**Litigation History**

Defendant was originally arrested on a Warrant on a Complaint charging him with being a felon in possession of five firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (ECF Nos. 1 and 2). After waiving timely indictment, a number of times, he agreed, in a written Plea Agreement, to plead guilty to a one-count information charging possession with intention to distribute one kilogram or more of heroin (Information, ECF No. 30; Plea Agreement, ECF No.

1

32). After reviewing a Presentence Investigation Report that recommended an advisory guideline range of 151-188 months, Judge Rice sentenced White to imprisonment for 120 months, the statutory minimum, on April 4, 2018 (Judgment, ECF No. 44). White took no appeal, but almost a year later filed the instant Motion to Vacate, pleading ineffective assistance of trial counsel in two respects: professionally unreasonable advice to plead guilty to the information and failure to file a motion to suppress "the evidence seized from his mother's and Movant's residence. . . ." (ECF No. 47, PageID 100.)

## Analysis

Defendant makes two claims of ineffective assistance of trial counsel, to wit, that Assistant Federal Defender Cheryll Bennett did not file a motion to suppress the drugs that were the basis of his conviction and failed to advise him of the fact that he would have won such a motion but instead advised him to plead guilty to the one-count Information. The two claims are intertwined: if there was no sound basis for a motion to suppress, then the motion would likely have failed and it was not ineffective assistance of trial counsel to fail to advise White it would have succeeded.

**Governing Legal Standard**

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's

> performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel=s challenged conduct, and to evaluate the conduct from counsel=s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

White was initially arrested for being a felon in possession of a firearm, based on seizure

3

of five firearms from his address at 305 Leland Avenue in Dayton, Ohio. The Complaint alleges that the firearms, in addition to several items of drug distribution equipment (notably a 12-ton hydraulic press) were found by Dayton Police during a search pursuant to warrant on September 29, 2016. White admitted to Dayton Police that two of the guns were his, but claimed other people used the press to prepare drugs for distribution. The Affidavit in support of the arrest warrant also shows that 305 Leland was shown on the Montgomery County Treasurer's website as having been purchased by Leland in July 2016.

Ms. Bennett was appointed to the case shortly after White's arrest and detention. Contrary to what he had told Detective St. Clair, White told Ms. Bennett that all the guns belonged to Jason Heath and she "prepared to mount a vigorous defense to the firearm charge, . . . ." (Bennett Affidavit, ECF No. 56-1, PageID 141.) At their initial meeting White told Ms. Bennett nothing about the drugs found at 135 Woodbury. *Id.* During his detention hearing, however, the prosecutor questioned White's girlfriend about his drug distribution activities and specifically about his storing heroin in a safe at his mother's home on Woodbury. *Id.* Having heard this testimony, White denied to Bennett that he had been living at the address on Woodbury and claimed that the drugs stored there also belonged to Jason Heath. Ms. Bennett then advised him that she believed the Government would indict him for the drugs found on Woodbury as well as the firearms found on Leland. Regarding a possible motion to suppress, Ms. Bennett avers:

> 19. Mr. White inquired about a motion to suppress and I advised him that because he did not live at 135 Woodbury, and because he disclaimed any ownership or knowledge of the drugs recovered from that residence, he had no standing to challenge the search of that house, or the seizure of anything contained therein.
>
> * * *

> 28. Based on my discussions with Mr. White, I saw no legal basis for filing a motion to suppress to challenge the search of his mother's home, as Mr. White had no possessory interest in 135 Woodbury, or any other relationship thereto, which provided him with standing necessary to challenge the search.

(ECF No. 56-1, PageID 141.)

**Defendant's Position**

In his Reply and Motion to Strike, White asserts the Government acted in bad faith in not producing the Dayton Municipal Court[1] warrants or underlying affidavits for the search of 305 Leland and 135 Woodbury (ECF No. 59, PageID 187-88). He claims the Court must therefore infer that those searches were warrantless, although he alleged in his § 2255 Motion that such warrants existed. However, the Government was not ordered to file the warrants; the order for Answer only requires the United States to respond to the allegations made in the Motion.

White claims Ms. Bennett's Affidavit is directly contradicted by her actions during the plea hearing where she allowed White to plead guilty on the basis of his admission that the drugs at 135 Woodbury were his whereas he had earlier claimed to her that they were not (ECF No. 59, PageID 191). He says, "There is nothing in the record to justify Ms. Bennett's pleading the Movant guilty except for his accepting responsibility for the drugs found in the safe at 135 Woodbury. The claims in the affidavit should impress the Court as frivolous." *Id.*

In essence White seeks to litigate in this § 2255 proceeding the motion to suppress he never litigated prior to pleading guilty. He seeks discovery of the search warrants and underlying

---

[1] White refers to these warrants as "Montgomery County" warrants but also refers to the issuing judge as The Honorable Mia Wortham Spells. This Court takes judicial notice that Judge Spells has been at all relevant times a Judge of the Dayton Municipal Court with authority to issue search warrants for the two addresses in question.

affidavits (ECF No. 59, PageID 187). Although he has never seen those documents, he asserts the Dayton Police Department committed a "serious violation of the Movant's Fourth Amendment rights" in executing searches pursuant to those warrants. *Id.* at PageID 188. He accuses Ms. Bennett of filing a false, self-serving and asserts her silence during the plea colloquy, acquiescing in White's acceptance of responsibility for the drugs at 135 Woodbury, directly contradicts her affidavit.

White acknowledges his admission of possession of the drugs found in the safe in the basement at 135 Woodbury. Based on that admission, he says he had standing to move to suppress the results of the search of that address. He now speaks of it as having been his second legal residence with its address still on his driver's license. And he provides an affidavit from his mother about his connections with that address.

White seeks discovery which would include the search warrants and affidavits and "all items of venue [sic] seized in the searches," and Cheryll Bennett's billing records. He seeks an evidentiary hearing at which Ms. Bennett, Dayton Police Detective St. Clair, the Defendant himself, and his mother, Connie White, would be called to testify.

**Application of the Standard**

When White appeared before Judge Rice to plead guilty as provided in the Plea Agreement, he was sworn to tell the truth (Transcript, ECF No. 56-2, PageID 145). While under oath he admitted that on September 29, 2016, law enforcement agents recovered twenty-four plastic bags containing heroin from a safe in the basement of his mother's residence at 135 Woodbury where White had stored it. *Id.* at PageID 151. He swore that he had made Ms. Bennett "as aware as [he]

6

can make her of the facts of this case." *Id.* at PageID 162. He also swore Ms. Bennett had told him of his option to plead not guilty or "to work out a Plea Agreement with the government," and that whatever choice he made must be his and his alone. *Id.* at PageID 162-63. He then averred that the choice to plead guilty was indeed his and his alone. *Id.* Judge Rice asked White if Ms. Bennett had discussed with him the option of pleading not guilty and the things he could do to help defend himself before and during trial and White answered, "Yes, your Honor." *Id.* He swore he was satisfied with the advice and legal services Ms. Bennett had provided. *Id.*

White relies on the conflict between his admission of possession of the drugs at Woodbury during the plea colloquy and Ms. Bennett's statement that White advised her "he did not live at his mother's house, and disputed storing drugs there. He further advised that any drugs found at his mother's home belonged to Jason Heath, who had unfettered access to the home." (Bennett Affidavit, ECF No. 56-1, PageID 141.) It is certainly correct that it cannot both be true that White did and did not store drugs in his mother's basement. Which is the Court to believe? The Magistrate Judge credits the truth of White's statement at the plea colloquy that the Woodbury drugs were his. He was, after all, sworn to tell the truth and warned about perjury and his admission was part of the price of the plea deal.

But the Magistrate Judge also credits Ms. Bennett's statement that he had previously told her the drugs were not his. White certainly would not have been the first criminal defendant who did not tell his or her attorney the whole truth at the outset of their relationship or even until well into the relationship. Ms. Bennett provides a coherent narrative about how the case developed: White intended to defend on the 305 Leland firearms, but decided to try to work out a plea agreement once he heard his girlfriend testify at the detention hearing. (Her testimony would surely not have been the fruit of any poisonous tree from the search of 305 Leland.) While the

7

facts set forth in White's and his mother's Affidavits would have provided a basis for asserting he had standing to pursue a motion to suppress, it was he who chose not to proceed in that way, but instead to negotiate a plea agreement.

As a basis for crediting Ms. Bennett's statements, the Magistrate Judge relies on her stellar reputation as a criminal defense attorney and the risks to that reputation should she be found to have lied in an affidavit. On the other hand, White's own Affidavit is self-serving and he had seven prior felony convictions before this one, which is a standard basis for disbelieving a witness.

White has not seen the search warrants and supporting affidavits for the Leland and Woodbury searches. When his mother attempted to see them in March 2019, she learned that they remained sealed. This is consistent with Ms. Bennett's assertion that they were sealed at the time the case was being litigated. Their contents remain a matter of speculation. While White might have been able to establish standing to challenge them, he has not shown that a motion to suppress would have been successful even if he had chosen to pursue that option, which he did not.

**Conclusion**

Defendant has not shown that Ms. Bennett performed deficiently in failing to file a motion to suppress or in not advising him that such a motion would have been successful. Nor has he shown prejudice from that failure because he has not shown that a motion to suppress would have been successful. Therefore, his Motion to Vacate should be dismissed. The ancillary Motion to Strike (ECF No. 59) is denied as are his embedded requests for discovery, an evidentiary hearing, and appointment of counsel. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

August 22, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).